IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT JOHN FREEMAN,<br><br>    Plaintiff,<br><br>  v.<br><br>DELTA AIR LINES, INC.,<br><br>    Defendant.<br>_____/ | No. C 13-04179 JSW<br><br>**ORDER RE TENTATIVE RULINGS AND QUESTIONS RE MARKMAN HEARING** |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE OF THE FOLLOWING TENTATIVE RULING AND QUESTIONS FOR THE HEARING SCHEDULED ON JUNE 12, 2015, AT 9:00 a.m.:

The Court has reviewed the parties' briefs and, thus, does not wish to hear the parties reargue matters addressed in those pleadings. If the parties intend to rely on legal authorities not cited in their briefs, they are ORDERED to notify the Court and opposing counsel of these authorities reasonably in advance of the hearing and to make copies available at the hearing. If the parties submit such additional authorities, they are ORDERED to submit the citations to the authorities only, without argument or additional briefing. *Cf.* N.D. Civil Local Rule 7-3(d). The parties will be given the opportunity at oral argument to explain their reliance on such authority. The Court suggests that associates or of counsel attorneys who are working on this case be permitted to address some or all of the Court's questions contained herein.

The parties shall each have 60 minutes to present their respective arguments on claim construction. The Court provides its tentative constructions of the disputed terms.

### 1. "Recording point of sale information"

The term "recording point of sale information" appears in Claim 26 of the '284 Patent.

Freeman argues that the term "recording point of sale information" must be construed to mean "recording sale's information that was originated at a point where a customer makes payment to a merchant in exchange for goods and services." (Parties' Second Joint Claim Construction and Prehearing Statement at 2.) Delta, on the other hand, argues that the term must be construed to mean "automatic collection and storage of information regarding the product related to the time and place that the product is paid for." (*Id.*)

The key dispute between the parties is whether the reference to "point-of-sale information" in the specifications should bear on the definition of the disputed term. The specification make particular reference to "point-of-sale information" and states that it might include "date and time of sale, costs, forms of payment, and zip codes of store." ('284 Patent at 5:52-54.) The specification further sets out that the mechanism described by the patent causes the "automatic collection and storage of point-of-sale information regarding product." (*Id.* at 5:50-52.) The intrinsic evidence supports Delta's proposed construction and Freeman's proposal is too vague to be helpful and fails to account for the automatic collection of the information at the point in time of the sale of a product.

The Court **tentatively** adopts the following construction: "automatic collection and storage of information regarding the product related to the time and place that the product is paid for."

### 2. "Trigger figurecode"

The term "trigger figurecode" appears in Claims 23, 26, 29 and 31 of the '284 Patent.

Freeman argues that the term "trigger figurecode" must be construed to mean "2-dimensional visually discernable nonalphanumeric graphic that is used in the manner recited by the claim in which the term is used." (Parties' Second Joint Claim Construction and Prehearing Statement at 3.) Delta, on the other hand, argues that the term must be construed to mean "a figurecode that contains instructions to a computer to take a specific action." (*Id.*)

The proposed construction offered by Freeman does not advance the jury's understanding of the term as the proposal merely states that it is used in the manner recited in the claim. The intrinsic evidence also defines the preferred embodiment to have "triggercode" that is "graphical and substantially nonalphanumeric." ('284 Patent at 3:49-51.) First, the definition of the term cannot disclaim alphanumeric symbols by virtue of the description of the preferred embodiment. Second, the description states that it is "*substantially* nonalphanumeric," indicating that it the patent envisioned more than wholly nonalphanumeric figurecode. Further, there is no support for adopting the description of the "2-dimensional, visually discernable graphic trigger figurecode" language from the dependent claim 32.

The Court **tentatively** adopts the following construction: "a figurecode that contains instructions to a computer to take a specific action."

### 3. "Incorporated into"

The term "incorporated into" appears in Claims 21 and 23 of the '284 Patent.

Freeman argues that the term "incorporated into" must be construed to mean "to include (something) as part of something" or "united into one body." (Parties' Second Joint Claim Construction and Prehearing Statement at 3.) Delta, on the other hand, argues that the term must be construed to mean "occupies same space as." (*Id.*)

It appears that the key dispute is whether the Court should rely on dictionary definitions of the term "incorporate" or rely on the explication of the term in the intrinsic evidence. The specifications distinguish between being incorporated into the letters of the trademark itself, figurecodes which "could be formed around the trademark, but still in the [same region]." ('284 Patent at 5:44-49.) The distinction between something formed around a trademark is manifestly not incorporated into the trademark. Incorporated into must signify something closer than near or around. Therefore, the Court tentatively adopts Delta's proposal.

The Court **tentatively** adopts the following construction: "occupies same space as."

**4.     "Providing information-gathering instruction to the computer system"**

The term "providing information-gathering instruction to the computer system" appears in Claim 23 of the '284 Patent.

Freeman argues that the term "providing information-gathering instruction to the computer system" must be construed to mean "prompting the computer system to automatically collect additional information." (*Id.* at 4.) Delta, on the other hand, argues that the term must be construed to mean "including in the triggercode instructions that command the system to record information." (*Id.*)

It appears that the key dispute is whether the Court may rely on the dictionary definition of "collect" which is not part of the term to be construed. Further, there is no support for the proposition that the triggercode prompts the computer to collect *additional* information. It is unclear from Freeman's proposal what the information would be in addition to. The Court cannot ignore the mention of "instruction" in the disputed term.

The Court **tentatively** adopts the following construction: "including in the triggercode instructions that command the system to record information."

**5.     "Start search location in the computer system of a plurality of start-search locations in the computer system to aid the search"**

The term "start search location in the computer system of a plurality of start-search locations in the computer system to aid the search" appears in Claim 31 of the '284 Patent.

Freeman argues that the term "start search location in the computer system of a plurality of start-search locations in the computer system to aid the search" must be construed to mean "a location in the computer systems which, if searched first, results in a faster search than if the location had not been searched first." (*Id.*) Delta, on the other hand, argues that the term must be construed to mean "a specific block of memory out of multiple specific blocks of memory." (*Id.*)

In context, the object of this element is to aid the search "for the stored electronic version of the graphic figurecode" in order to save search time. ('284 Patent at 8:31-34.) But, Delta's proposed construction requires that the position of the start search location be a specific block of memory. The Court finds lack of support for this restriction on the construction of the

4

1 term. Rather, as Freeman proposes, the location must be a place that, if searched first, results in
2 a faster search than had it not been searched first.

3 The Court **tentatively** adopts the following construction: "a location in the computer
4 systems which, if searched first, results in a faster search than if the location had not been
5 searched first."

6 **6.     "Product identifier"**

7 The term "product identifier" appears in Claims 21 and 23 of the '284 Patent.

8 Freeman argues that the term "product identifier" must be construed to mean "product
9 identifier region." (*Id*. at 4.) Delta, on the other hand, argues that the term must be construed to
10 mean "the name of the product or an indicia of source." (*Id.*)

11 Freeman argues that if this term is not defined to indicate the region of the product
12 identifier, the claim would be invalid, thus requiring the Court to assume that to the extent the
13 term is unclear or indefinite, it should be resolved to indicate the region around the product
14 identifier. This argument is not persuasive. Merely defining the product identifier as a product
15 identifier region misses the distinction between the two terms. The drawing (figure 4) in the
16 patent has an arrow which points to the product identifier region and the specification
17 distinguishes this broader area with a reference to "the trademark itself." ('284 Patent at 5:32-
18 35.)

19 The Court **tentatively** adopts the following construction: "the name of the product or an
20 indicia of source."

21 **7.     "Product identifier region"**

22 The term "product identifier region" appears in Claims 21 and 26 of the '284 Patent.

23 Freeman argues that the term "product identifier region" must be construed to mean
24 "region where the product is identified." (*Id*. at 5.) Delta, on the other hand, argues that the
25 term must be construed to mean "area in or around the product identifier and closer than other
26 graphic or alphanumeric writing on the product." (*Id.*)

27 It is not clear that Freeman's proposed construction would aid the jury as it is, for the
28 most part, tautological. Delta argues that in order to distinguish itself from prior art (McNair

5

1 patent), the patent at issue had to distinguish relative proximity of the region surrounding the
2 product identifier. It is not clear, however, why the Court should adopt Delta's proposal that
3 the area must be closer to the product identifier than to other graphic or alphanumeric writing
4 on the product.

5 The Court **tentatively** adopts the following construction: "area in or around *and closely*
6 *proximate to* the product identifier."

7 The last three terms are related and should be construed in tandem.

### 8. "Graphic figurecode"

9 The term "graphic figurecode" appears in Claims 31 of the '284 Patent.

10 Freeman argues that the term "graphic figurecode" must be construed to mean "graphic
11 form, such as a bar code." (*Id*.) Delta, on the other hand, argues that the term must be
12 construed to mean "a visually discernable object containing encoded information associated
13 with an individual." (*Id.*)

### 9. "Graphic product I.D. figurecode"

15 The term "graphic product I.D. figurecode" appears in Claim 21 of the '284
16 Patent.

17 Freeman argues that the term "graphic product ID figurecode" must be construed to
18 mean "graphic form, such as a bar code, identifying the chosen product." (*Id*.) Delta, on the
19 other hand, argues that the term must be construed to mean "a visually discernable object
20 containing encoded information associated with a retail product." (*Id.*)

### 10. "Graphic I.D. figurecode"

22 The term "graphic I.D. figurecode" appears in Claim 26 of the '284 Patent.

23 Freeman argues that the term "graphic I.D. figurecode" must be construed to mean
24 "graphic form, such as a bar code, identifying the chosen product." (*Id*. at 6.) Delta, on the
25 other hand, argues that the term must be construed to mean "a visually discernable object
26 containing encoded information associated with an item." (*Id.*)

27 Freeman basically contends that each of these terms should be construed to mean nearly
28 the same thing. However, different elements in the claim must recite different structures.

However, the Court finds that portions of Freeman's proposed constructions conform to the patent's specifications and definitions.

The Court **tentatively** adopts the following constructions:

For graphic figurecode: "graphic form, such as a bar code, containing encoded information."

For graphic I.D. product figurecode: "graphic form, such as a bar code, containing encoded information associated with a retail product."

For graphic I.D. figurecode: "graphic form, such as a bar code, containing encoded information associated with a retail product."

Further questions for the parties to address:

(1) Does Delta contend that the patent as drafted fails for obviousness or challenge the validity of the patent for any other reason?

(2) Have the parties considered further mediation of their dispute?

**IT IS SO ORDERED.**

Dated: June 5, 2015

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

Case 4:13-cv-04179-JSW Document 118 Filed 06/05/15 Page 8 of 8