IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ALBERT JOHN FREEMAN,

    Plaintiff,

v.

DELTA AIR LINES, INC.,

    Defendant.

No. C 13-04179 JSW

**CLAIM CONSTRUCTION ORDER**

The Court has been presented with a technology tutorial and briefing leading up to a hearing pursuant to *Markman v. Westview Instruments, Inc.,* 517 U.S. 370 (1996). This Order construes the disputed claim terms selected by the parties, which appear in the patent at issue in this case: United States Patent No. 5,661,284 ("the '284 Patent") a continuation-in-part for the technology governing a commercial transaction system using multi-purposed credit/debit/identification card.

**BACKGROUND**

Plaintiff Albert John Freeman ("Freeman") contends that Defendant Delta Air Lines, Inc. ("Delta") infringes his patent. Freeman's patent relates to the technology governing commercial transactions that require the use of figurecodes to identify information which can be read by an associated computer system.

The Court shall address additional facts as necessary in the remainder of this Order.

# ANALYSIS

**A.      Legal Standard.**

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004). The interpretation of the scope and meaning of disputed terms in patent claims is a question of law and exclusively within the province of a court to decide. *Markman*, 517 U.S. at 372. The inquiry into the meaning of the claim terms is "an objective one." *Innova/Pure Water*, 381 F.3d at 1116. As a result, when a court construes disputed terms, it "looks to those sources available to the public that show what a person of skill in the art would have understood the disputed claim language to mean." *Id*. In most cases, a court's analysis will focus on three sources: the claims, the specification, and the prosecution history. *Markman v. Westview Instruments, Inc*., 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). However, on occasion, it is appropriate to rely on extrinsic evidence regarding the relevant scientific principles, the meaning of technical terms, and the state of the art at the time at the time the patent issued. *Id.* at 979-81.

The starting point of the claim construction analysis is an examination of the specific claim language. A court's "claim construction analysis must begin and remain centered on the claim language itself, for that is the language that the patentee has chosen to particularly point out and distinctly claim the subject matter which the patentee regards as his invention." *Innova/Pure Water*, 381 F.3d at 1116 (internal quotations and citations omitted). Indeed, in the absence of an express intent to impart a novel meaning to a term, an inventor's chosen language is given its ordinary meaning. *York Prods., Inc. v. Cent. Tractor Farm & Family Center*, 99 F.3d 1568, 1572 (Fed. Cir. 1996). Thus, "[c]laim language generally carries the ordinary meaning of the words in their normal usage in the field of the invention." *Invitrogen Corp. v. Biocrest Mfg., L.P*., 327 F.3d 1364, 1367 (Fed. Cir. 2003); *see also Renishaw v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998) (recognizing that "the claims define the scope of the right to exclude; the claim construction inquiry, therefore, begins and ends in all cases with the actual words of the claim"). A court's final construction, therefore, must

2

accord with the words chosen by the patentee to mete out the boundaries of the claimed invention.

The court should also look to intrinsic evidence, including the written description, the drawings, and the prosecution history, if included in the record, to provide context and clarification regarding the intended meaning of the claim terms. *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324-25 (Fed. Cir. 2002). The claims do not stand alone. Rather, "they are part of 'a fully integrated written instrument.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc) (quoting *Markman*, 52 F.3d at 978). The specification "may act as a sort of dictionary, which explains the invention and may define terms used in the claims." *Markman*, 52 F.3d at 979. The specification also can indicate whether the patentee intended to limit the scope of a claim, despite the use of seemingly broad claim language. *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1341 (Fed. Cir. 2001) (recognizing that when the specification "makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question").

Intent to limit the claims can be demonstrated in a number of ways. For example, if the patentee "acted as his own lexicographer," and clearly and precisely "set forth a definition of the disputed claim term in either the specification or prosecution history," a court will defer to that definition. *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002). In order to so limit the claims, "the patent applicant [must] set out the different meaning in the specification in a manner sufficient to give one of ordinary skill in the art notice of the change from ordinary meaning." *Innova/Pure Water*, 381 F.3d at 1117. In addition, a court will adopt an alternative meaning of a term "if the intrinsic evidence shows that the patentee distinguished that term from prior art on the basis of a particular embodiment, expressly disclaimed subject matter, or described a particular embodiment as important to the invention." *CCS Fitness*, 288 F.3d at 1367. For example, the presumption of ordinary meaning will give way where the "inventor has disavowed or disclaimed scope of coverage, by using words or expressions of

3

manifest exclusion or restriction, representing clear disavowal of claim scope." *Gemstar-TV Guide Int'l Inc. v. ITC*, 383 F.3d 1352, 1364 (Fed. Cir. 2004). The disclaimer in the prosecution history must be "clear and unmistakable." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325-26 (Fed. Cir. 2003). Likewise, the specification may be used to resolve ambiguity "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex*, 299 F.3d at 1325.

However, limitations from the specification (such as from the preferred embodiment) may not be read into the claims, absent the inventor's express intention to the contrary. *Id*. at 1326; *see also CCS Fitness*, 288 F.3d at 1366 ("[A] patentee need not 'describe in the specification every conceivable and possible future embodiment of his invention.'") (quoting *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1344 (Fed. Cir. 2001)). To protect against this result, a court's focus should remain on understanding how a person of ordinary skill in the art would understand the claim terms. *Phillips*, 415 F.3d at 1323. Additionally, "[w]hen consulting the specification to clarify the meaning of claim terms, court must take care not to import limitations into the claims from the specification." *Abbott Laboratories v. Sandoz, Inc.*, 566 F. 3d 1282, 1288 (Fed. Cir. 2009).

Similarly, the Federal Circuit has repeatedly cautioned courts against reading limitations into the claims based on a preferred embodiment: "although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to these embodiments." *Phillips*, 415 F. 3d at 1323. Courts have also "expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment." *Liebel-Flarsheim Co. v. Medrard, Inc.*, 358 F. 3d 898, 906 (Fed. Cir. 2004).

If the analysis of the intrinsic evidence fails to resolve any ambiguity in the claim language, a court then may turn to extrinsic evidence, such as expert declarations and testimony from the inventors. *Intel Corp. v. VIA Techs., Inc.*, 319 F.3d 1357, 1367 (Fed. Cir. 2003) ("When an analysis of *intrinsic* evidence resolves any ambiguity in a disputed claim term, it is

4

improper to rely on extrinsic evidence to contradict the meaning so ascertained.") (emphasis in original). When considering extrinsic evidence, a court should take care not to use it to vary or contradict the claim terms. Rather, extrinsic evidence is relied upon more appropriately to assist in determining the meaning or scope of technical terms in the claims. *Vitronics Corp. v. Conceptronic*, *Inc.*, 90 F.3d 1576, 1583-84 (Fed. Cir. 1996).

Dictionaries also may play a role in the determination of the ordinary and customary meaning of a claim term. In *Phillips*, the Federal Circuit reiterated that "[d]ictionaries or comparable sources are often useful to assist in understanding the commonly understood meanings of words . . . ." *Phillips*, 415 F.3d at 1322. The *Phillips* court, however, also admonished that district courts should be careful not to allow dictionary definitions to supplant the inventor's understanding of the claimed subject matter. "The main problem with elevating the dictionary to . . . prominence is that it focuses the inquiry on the abstract meaning of the words rather than on the meaning of claim terms within in the context of the patent." *Id*. at 1321. Accordingly, dictionaries necessarily must play a role subordinate to the intrinsic evidence.

In addition, a court has the discretion to rely upon prior art, whether or not cited in the specification or the file history, but only when the meaning of the disputed terms cannot be ascertained from a careful reading of the public record. *Vitronics*, 90 F.3d at 1584. Referring to prior art may make it unnecessary to rely upon expert testimony, because prior art may be indicative of what those skilled in the art generally understood certain terms to mean. *Id.*

**B.     Claim Construction.**

  **1.     "Recording point of sale information"**

The term "recording point of sale information" appears in Claim 26 of the '284 Patent.

Freeman argues that the term "recording point of sale information" must be construed to mean "recording sale's information that was originated at a point where a customer makes payment to a merchant in exchange for goods and services." (Parties' Second Joint Claim Construction and Prehearing Statement at 2.) Delta, on the other hand, argues that the term

5

1  must be construed to mean "automatic collection and storage of information regarding the
2  product related to the time and place that the product is paid for." (*Id.*)

3  The key dispute between the parties is whether the reference to "point-of-sale
4  information" in the specifications should bear on the definition of the disputed term. The
5  specifications make particular reference to "point-of-sale information" and state that it might
6  include "date and time of sale, costs, forms of payment, and zip codes of store." ('284 Patent at
7  5:52-54.) The specifications further set out that the mechanism described by the patent causes
8  the "automatic collection and storage of point-of-sale information regarding product." (*Id.* at
9  5:50-52.) The intrinsic evidence supports Delta's proposed construction. Freeman's proposal
10 is too vague to be helpful and fails to account for the automatic collection of the information at
11 the point in time of the sale of a product.

12 Accordingly, the Court adopts the following construction: "automatic collection and
13 storage of information regarding the product related to the time and place that the product is
14 paid for."

### 2. "Trigger figurecode"

16 The term "trigger figurecode" appears in Claims 23, 26, 29 and 31 of the '284 Patent.
17 Freeman argues that the term "trigger figurecode" must be construed to mean "2-
18 dimensional visually discernable nonalphanumeric graphic that is used in the manner recited by
19 the claim in which the term is used." (Parties' Second Joint Claim Construction and Prehearing
20 Statement at 3.) Delta, on the other hand, argues that the term must be construed to mean "a
21 figurecode that contains instructions to a computer to take a specific action." (*Id.*)

22 The proposed construction offered by Freeman does not advance the jury's
23 understanding of the term as the proposal merely states that it is used in the manner recited in
24 the claim. The intrinsic evidence also defines the preferred embodiment to have "triggercode"
25 that is "graphical and substantially nonalphanumeric." ('284 Patent at 3:49-51.) First, the
26 definition of the term cannot disclaim alphanumeric symbols by virtue of the description of the
27 preferred embodiment. Second, the description states that it is "*substantially*
28 nonalphanumeric*,*" indicating that it the patent envisioned more than wholly nonalphanumeric

6

figurecode. Further, there is no support for adopting the description of the "2-dimensional, visually discernable graphic trigger figurecode" language from the dependent claim 32. However, the parties agreed at the claim construction hearing that the figurecode itself does not actually contain instructions, but rather provides instructions to a computer to take specific action.

Accordingly, the Court adopts the following construction: "a figurecode that provides instructions to a computer to take a specific action."

### 3. "Incorporated into"

The term "incorporated into" appears in Claims 21 and 23 of the '284 Patent.

Freeman argues that the term "incorporated into" must be construed to mean "to include (something) as part of something" or "united into one body." (Parties' Second Joint Claim Construction and Prehearing Statement at 3.) Delta, on the other hand, argues that the term must be construed to mean "occupies same space as." (*Id.*)

It appears that the key dispute is whether the Court should rely on dictionary definitions of the term "incorporate" or rely on the explication of the term in the intrinsic evidence. The specifications distinguish between being incorporated into the letters of the trademark itself, figurecodes which "could be formed around the trademark, but still in the [same region]." ('284 Patent at 5:44-49.) The distinction between something formed around a trademark is manifestly not incorporated into the trademark. Incorporated into must signify something closer than near or around.

Accordingly, the Court adopts the following construction: "occupies same space as."

### 4. "Providing information-gathering instruction to the computer system"

The term "providing information-gathering instruction to the computer system" appears in Claim 23 of the '284 Patent.

Freeman argues that the term "providing information-gathering instruction to the computer system" must be construed to mean "prompting the computer system to automatically collect additional information." (*Id.* at 4.) Delta, on the other hand, argues that the term must

7

1 be construed to mean "including in the triggercode instructions that command the system to
2 record information." (*Id.*)

3 It appears that the key dispute is whether the Court may rely on the dictionary definition
4 of "collect" which is not part of the term to be construed. Further, there is no support for the
5 proposition that the triggercode prompts the computer to collect *additional* information. It is
6 unclear from Freeman's proposal what the information would be in addition to. The Court
7 cannot ignore the mention of "instruction" in the disputed term. At the claim construction
8 hearing, the parties agreed to change the proposed verb from "command" to "instruct."

9 Accordingly, the Court adopts the following construction: "including in the triggercode
10 instructions that instruct the system to record information."

**5. "Start search location in the computer system of a plurality of start-search locations in the computer system to aid the search"**

12 The term "start search location in the computer system of a plurality of start-search
13 locations in the computer system to aid the search" appears in Claim 31 of the '284 Patent.

14 Freeman argues that the term "start search location in the computer system of a plurality
15 of start-search locations in the computer system to aid the search" must be construed to mean "a
16 location in the computer systems which, if searched first, results in a faster search than if the
17 location had not been searched first." (*Id.*) Delta, on the other hand, argues that the term must
18 be construed to mean "a specific block of memory out of multiple specific blocks of memory."
19 (*Id.*)

20 In context, the object of this element is to aid the search "for the stored electronic
21 version of the graphic figurecode" in order to save search time. ('284 Patent at 8:31-34.) But,
22 Delta's proposed construction requires that the position of the start search location be a specific
23 block of memory. The Court finds lack of support for this restriction on the construction of the
24 term. Rather, as Freeman proposes, the location must be a place that, if searched first, results in
25 a faster search than had it not been searched first.

26 Accordingly, the Court adopts the following construction: "one location in a plurality of
27 multiple locations in the computer systems which, if searched first, results in a faster search
28 than if the location had not been searched first."

8

### 6. "Product identifier"

The term "product identifier" appears in Claims 21 and 23 of the '284 Patent.

Freeman argues that the term "product identifier" must be construed to mean "product identifier region." (*Id*. at 4.) Delta, on the other hand, argues that the term must be construed to mean "the name of the product or an indicia of source." (*Id.*)

Freeman argues that if this term is not defined to indicate the region of the product identifier, the claim would be invalid, thus requiring the Court to assume that to the extent the term is unclear or indefinite, it should be resolved to indicate the region around the product identifier. This argument is not persuasive. Merely defining the product identifier as a product identifier region misses the distinction between the two terms. The drawing (figure 4) in the patent has an arrow which points to the product identifier region and the specification distinguishes this broader area with a reference to "the trademark itself." ('284 Patent at 5:32-35.)

Accordingly, the Court adopts the following construction: "the name of the product or an indicia of source."

### 7. "Product identifier region"

The term "product identifier region" appears in Claims 21 and 26 of the '284 Patent.

Freeman argues that the term "product identifier region" must be construed to mean "region where the product is identified." (*Id*. at 5.) Delta, on the other hand, argues that the term must be construed to mean "area in or around the product identifier and closer than other graphic or alphanumeric writing on the product." (*Id.*)

It is not clear that Freeman's proposed construction would aid the jury as it is, for the most part, tautological. Delta argues that in order to distinguish itself from prior art (McNair patent), the patent at issue had to distinguish relative proximity of the region surrounding the product identifier. It is not clear, however, why the Court should adopt Delta's proposal that the area must be closer to the product identifier than to other graphic or alphanumeric writing on the product.

9

Accordingly, the adopts the following construction: "area in or around and closely proximate to the product identifier."

The last three terms are related and should be construed in tandem.

### 8. "Graphic figurecode"

The term "graphic figurecode" appears in Claims 31 of the '284 Patent.

Freeman argues that the term "graphic figurecode" must be construed to mean "graphic form, such as a bar code." (*Id*.) Delta, on the other hand, argues that the term must be construed to mean "a visually discernable object containing encoded information associated with an individual." (*Id.*)

### 9. "Graphic product I.D. figurecode"

The term "graphic product I.D. figurecode" appears in Claim 21 of the '284 Patent.

Freeman argues that the term "graphic product ID figurecode" must be construed to mean "graphic form, such as a bar code, identifying the chosen product." (*Id*.) Delta, on the other hand, argues that the term must be construed to mean "a visually discernable object containing encoded information associated with a retail product." (*Id.*)

### 10. "Graphic I.D. figurecode"

The term "graphic I.D. figurecode" appears in Claim 26 of the '284 Patent.

Freeman argues that the term "graphic I.D. figurecode" must be construed to mean "graphic form, such as a bar code, identifying the chosen product." (*Id*. at 6.) Delta, on the other hand, argues that the term must be construed to mean "a visually discernable object containing encoded information associated with an item." (*Id.*)

Freeman basically contends that each of these terms should be construed to mean nearly the same thing. However, different elements in the claim must recite different structures. However, the Court finds that portions of Freeman's proposed constructions conform to the patent's specifications and definitions.

Accordingly, the Court adopts the following constructions:

For graphic figurecode: "graphic form, such as a bar code, containing encoded information."

For graphic I.D. product figurecode: "graphic form, such as a bar code, containing encoded information associated with a retail product."

For graphic I.D. figurecode: "graphic form, such as a bar code, containing encoded information associated with a retail product."

## CONCLUSION

Based on the analysis set forth above, the Court adopts the foregoing constructions of the disputed terms. The parties are ORDERED to submit a further joint case management report pursuant to Patent Standing Order ¶ 13 by no later than October 16, 2015.

**IT IS SO ORDERED.**

Dated: September 24, 2015

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE